FARMERS EDUCATIONAL AND COOPERATIVE UNION OF AMERICA, APPELLANT, V. FARMERS EDUCATIONAL AND COOPERATIVE STATE UNION OF NEBRASKA, APPELLEE.

275 N. W. 464

FILED OCTOBER 22, 1937. No. 29992.

*Battelle, Strehlow & Morearty,* for appellant.

*A. C. Pancoast* and *F. H. Woodland, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and LIGHTNER, District Judge.

DAY, J.

This is an action brought by the Farmers Educational and Cooperative Union of America against the Farmers Educational and Cooperative State Union of Nebraska to recover the dues of members collected by the state union to which the national union avers it is entitled. This case was tried to a jury in the district court, but at the conclusion of all the testimony both parties moved for a directed verdict, whereupon the court dismissed the jury, took the matter under consideration, and rendered judgment in favor of the defendant. The plaintiff prosecutes an appeal from this judgment.

A resumé of the history of the two organizations will

help an understanding of this case. The national union organized local unions in Nebraska prior to 1913, until there was a sufficient number of such local unions with adequate membership to form themselves into a state union. The state union was formed, and a charter was taken from the national union. The by-laws of the national union, incorporated under the laws of the state of Texas, provided for the payment of 25 cents a year *per capita*, which was to be collected and remitted quarterly by the secretary of the state union. It is the contention of the state union that it is a separate and distinct entity, and that its members are not members of the national union. It claims that it is not bound by the by-laws of the national union. The state union collects its dues in a lump sum, and it has for a number of years paid the national union dues of 25 cents a member from this money. There was no controversy about this payment until the year 1934. The fiscal year for both national and state unions is from November 1 until October 31 of the next year. The time involved in this action is from November 1, 1933, until October 31, 1934. During this period, on January 10 and 11, 1934, the state union held its annual meeting. At that meeting a resolution was adopted that a committee of two members from each director's district should be appointed to investigate the national union officers, and "that their decision shall be the guide as to further contribution of dues to the national union." This committee was appointed, and, after investigation, reported to the board of directors on May 3, 1934, which report is a part of the record. It is brief and clear, and as far as material is: "We recommend the payment of dues to the national farmers union conditional upon the resignation of the present national secretary." The national secretary did not resign, and the dues were not ordered paid by the board of directors, nor paid by the secretary. The defendant contends that they could not be paid except by such an order under the articles of incorporation of the state union. The national union suspended the state union for nonpayment of dues November 19, 1934,

after the 1934 fiscal year was ended. The organization of the national union and the state union was a sort of representative plan. Each local union and each county organization was entitled to one voting representative in the annual convention. The national union holds annual meetings, and each state union is entitled to representation in such a meeting graduated according to its membership. The delegates from Nebraska were present at the annual meeting held in November, 1933, but were not present at the annual meeting held in Sioux Falls, South Dakota, on November 20 and 21, 1934. There is no question that the amount in controversy is $4,095.85, the defendant, of course, insisting that it is not liable for payment of any sum. The defendant paid subsequent dues calculated upon its membership, and was given representation, but never paid the dues for the 1934 fiscal year, and was not suspended until that year had ended.

This case is not particularly complicated if the issues are closely attended. The cause of action of the national union against the state union is based upon contract. Under the alleged contractual relation it is averred that the state union has collected the sum of $4,095.85 for the national union, which it has refused to pay it.

The first question for our determination is the relation existing between the national and state unions. If this relationship were established by a written contract expressed in unambiguous terms, the relationship would necessarily be determined by that instrument. It is a general rule that, where a contractual relation exists by virtue of a written contract expressed in clear and unambiguous language, the court will not look further to construe it. *Crancer v. Reichenbach,* 130 Neb. 645, 266 N. W. 57; *Michigan Stamping Co. v. Michigan Employers Casualty Co.,* 235 Mich. 4, 209 N. W. 104.

But such is not in accord with the facts. The contractual relation exists, if at all, by a number of documents which are not signed by the other party. The acceptance is only by act of the party. When the local unions formed the state

union, the defendant, they secured a charter from the national union. Incorporating under that charter they in fact acquiesced in the terms of that charter, and the articles of incorporation under which it was issued. They had that charter during the year in controversy. For approximately 15 years they had retained this charter. During that time the defendant union through its officers had paid 25 cents a member. Every year they set up on their books the sum based upon 25 cents a member for payment to the national union. They did this in 1934. They reported the amount to the national union officers. The articles of incorporation of the state union did not provide for such payment. The contractual relation is fixed by the several documents and the action thereunder by the parties. *Hull Co. v. Westerfield,* 107 Neb. 705, 186 N. W. 992; *Cady v. Travelers Ins. Co.,* 93 Neb. 634, 142 N. W. 107. Where a contract is ambiguous, the court may consider its construction by the parties to ascertain its true meaning. *Ord Hardware Co. v. J. I. Case Threshing Machine Co.,* 83 Neb. 353, 119 N. W. 682.

Every action of the parties and every interpretation of the parties leads us to construe the contractual relation between the parties as one that requires the payment of the sum sought in this case. They collected and set apart the money to pay this sum. This action is not to recover during time of suspension, but while the relation continued. The judgment is reversed, with direction to the trial court to enter a judgment for the plaintiff.

REVERSED.