Virgil Sims, for the Use of Edward Lee Ruark, Plaintiff-Appellant, v. Illinois National Casualty Co. of Springfield, Illinois, Garnishee, a/k/a Illinois National Insurance Co. of Springfield, Illinois, Garnishee, Defendant-Appellee.

Gen. No. 10,446.

Third District.

October 11, 1963.

Cassidy & Cassidy, of Peoria (John E. Cassidy, Jr., of counsel), for appellant.

Proctor & Wilhelm, of Lewistown (George P. Proctor, of counsel), for appellee.

ROETH, JUSTICE.

On October 22, 1952, Edward Lee Ruark was riding in a truck owned and being driven by one, Virgil Sims. This truck was involved in a collision with another motor vehicle owned by one, Ghlee Watson and being driven by one, Sherman Kinsel, as his servant. Ruark was severely injured. It so happened that Illinois National Casualty Company, now Illinois National Insurance Company, had prior thereto issued separate policies of automobile liability insurance to each, Virgil Sims and Ghlee Watson. The insurance company commenced an investigation of the collision either the same day or shortly thereafter. As early as October 27, 1952, an area supervisor in the home office of the insurance company concluded that the insurance company would not have to defend against or pay any claims asserted by Ruark against its policyholder Sims and he so advised the adjuster and investigator in the area. This decision was, sometime between Oc-

tober 23, 1952, and December 5, 1952, relayed to Sims and later to his personal attorney.

On March 12, 1954, Ruark commenced a suit against Sims, Watson and Kinsel to recover damages for his personal injuries sustained in the collision. The insurance company was advised of the suit and received a copy of the complaint. The insurance company employed counsel for Watson and Kinsel, who appeared, answered and conducted the trial of the case on their behalf as defendants. Sims was required to employ his own personal attorney to defend the suit, who likewise appeared, answered and conducted the trial on his behalf, since the insurance company would not depart from its initial position that it would not defend Sims. A trial of the case before a jury resulted in a not guilty verdict as to Watson and Kinsel and a guilty verdict as to Sims with damages fixed at $13,-034.86. Judgments were entered on these verdicts and no appeal was taken. Subsequently a garnishment action was commenced against the insurance company as insurer of Sims and it is that garnishment suit that forms the basis of this appeal.

The pleadings in the personal injury suit are important. The complaint filed by Ruark, a single count complaint, alleges that on the day of the collision "he was riding as passenger in a truck then owned by Virgil Sims, one of the defendants herein, which said truck with the said plaintiff, as passenger, was then and there being operated and driven by said defendant (Sims)." The complaint then alleges that the truck came in contact with the vehicle of Watson driven by Kinsel as a result of which he sustained his injuries. It is further alleged that he, Ruark, was exercising ordinary care for his own safety and that each of the defendants was negligent, which negligence concurred in producing his injury. Sims, by his personal counsel as above, filed an answer denying most of the material allegations of the complaint. Counsel for Wat-

187

son and Kinsel, retained by the insurance company, filed a separate but joint answer on behalf of Watson and Kinsel in which they admitted that Ruark was riding as a passenger in the truck but further alleged that "the said Ruark was then and there an employee of said Virgil Sims and was then and there acting in the course of his employment."

It is also important to note the policy provisions of the policy issued to Sims. The liability coverage is $20,000. Under the title "Insuring Agreements" we find the following:

"Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Following this, coverages B through J provide for varying types of coverage. Following these coverages there is:

"II Defense, Settlement, Supplementary Payments.

"As respects the insurance afforded by the other terms of this policy under coverages A and B the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient";

188

The policy also incorporates certain "Exclusions," the material one here being:

"This policy does not apply:

"(d) under coverages A and C, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law";

It is the contention of counsel for the plaintiff in the garnishment action that under the foregoing factual situation, the defendant was obligated, under the terms of its policy of insurance with Sims, to defend Sims in the suit by Ruark and that having breached its contract in this regard it is liable for the full amount of the judgment with interest.

It is the contention of counsel for the defendant insurance company that the plaintiff has failed to maintain the burden of proof in the garnishment action which was to show that the recovery by Ruark was within the policy coverage.

In 7 Am Jur 2d, Automobile Insurance Sec 160, the general rule is stated as follows:

"Under the provisions of the usual or standard automobile liability insurance policies, the insurer, in line with its right to settle claims against the insured which are within the coverage of the policy and its right under the policy to the exclusive control over litigation against the insured, is bound by the provisions of the policy issued by it to defend the insured against all actions brought against him which are, judging by the allegations in such actions, within the coverage of the policy, even if any of the allegations of the suit are

189

groundless, false, or fraudulent. So, generally, an automobile liability insurer need not defend an action against the insured if it is under no legal obligation to defend, but, on the other hand, the wrongful refusal by the insurer to comply with its obligation to defend an action against the insured as required by the policy is a breach of its contract for which the insured may recover. More specifically, while the insurer may, without incurring liability for a breach of its contract with the insured, refuse to defend on the ground that the action is not within the coverage of the policy if such refusal is justifiable, the rule is otherwise if such refusal is unjustifiable. If the refusal is unjustified, even though based on an honest mistake of the insurer, the insurer becomes liable, because of a breach of its contract, for all damages to the insured resulting from the breach and, *also, loses certain of its rights under the policy.*" (Emphasis ours.)

This general rule is the subject of an exhaustive annotation in 49 ALR2d 696 which is supplemented in the ALR Supplement Service. It appears from the annotation that the rule is practically universally recognized. Recognition of the rule in Illinois will be found in Kinnan v. Charles B. Hurst Co., 317 Ill 251, 148 NE 12; Rom v. Gephart, 30 Ill App2d 199, 173 NE2d 828; Gould v. Country Mut. Cas. Co., 37 Ill App2d 265, 185 NE2d 603. A consideration of the foregoing general rule poses the initial and all important question as to how the determination of whether the claim is within or without the coverage is to be made by the insurer. The answer to this question should in turn determine whether or not the refusal to defend is justified.

■ In 7 Am Jur 2d, Automobile Ins, Sec 162, it is said:

190

"As a general rule, and in accordance with the usual or standard policy provision itself, the obligation of an automobile liability insurer to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint or petition in such action. As to the test for determining whether particular allegations require the insurer to defend the action brought against the insured, the general rule is that the insurer is under a duty to defend a suit against the insured where the complaint or petition in such suit alleges a state of facts within the coverage of the policy, but is free of such obligation where the alleged facts fail to bring the case within the policy coverage."

This statement is likewise the subject of an exhaustive annotation in 50 ALR2d 458, which is supplemented by ALR Supplement Service. At the outset of the annotation the rule is announced as follows:

"It appears to be well settled that, generally speaking, the obligation of a liability insurance company under a policy provision requiring it to defend an action brought against the insured by a third party is to be determined by the allegations of the complaint in such action."

Cited in support of this statement are cases from Illinois and many other states indicating a wide acceptance of the rule. In Appleman Ins Law & Practice, Vol 7A, Sec 4683, page 436, the rule is stated as follows:

"An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer

191

must defend, irrespective of the insured's ultimate liability to the plaintiff."

Thus, according to the foregoing, the generally recognized doctrine is that the insurer is under a duty to defend a suit against an insured where the petition or complaint in such suit alleges a state of facts within the coverage of the policy. And while there is some conflict of authority, the majority of decisions of the courts which have passed on the question adhere to the general rule even though the insurer's investigation discloses a conflict between the allegations of the complaint and the actual facts as known to or ascertainable by the insurer. Typical of the latter cases is Lee v. Aetna Cas. & Surety Co., 178 F2d 750 (NY) where the court said:

"This language means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; . . . and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' "

■ Applying the foregoing to the allegations of the original complaint in the case at bar it is to be noted at the outset that it is our opinion that Ruark's complaint against Sims stated a cause of action. It alleged that Ruark was a "passenger" in Sims' motor vehicle and that Sims was negligent and that he, Ruark, was exercising due care for his own safety. There is nothing in these allegations that would suggest an exclusion from coverage under the policy. It may be argued that by the same token these allegations do not negative the possibility that Ruark might be a passenger in the motor vehicle and at the same time be an employee of Sims engaged in his employment. Even in such a situation the insurer is obligated

to defend if there is, *potentially,* a case under the complaint within the coverage of the policy. See cases 50 ALR2d 504 and Sears, Roebuck & Co. v. Travelers Ins. Co., 261 F2d 774; George H. Wolff Sons, Inc. v. Aetna Cas. & Surety Co., 286 F2d 862; Sears, Roebuck and Co. v. Liberty Mutual Insurance Co., 199 F Supp 769; Brooklyn & Queens Allied Oil Burner Service Co. v. Security Mut. Ins. Co., 27 Misc2d 401, 208 NYS2d 259. In the last cited case the court said:

"It is well settled that it is the obligation of the insurer to defend an action brought against its insured where the complaint in that action alleges a state of facts within the coverage of the policy, irrespective of the ultimate liability of the insured. (Citing cases.) Moreover, even where it appears, as here, that the complaint in such an action does not state facts with sufficient definiteness to clearly bring the case within or without the coverage of the liability policy, the insurer is nonetheless obliged to defend the action if there is, *potentially,* a case under the complaint within the coverage of the policy; or, stated in other words, where there is doubt as to whether or not the allegations of the complaint in the action against the insured state a cause of action within the coverage of the policy sufficient to compel the insurer to defend the action, such doubt will be resolved in favor of the insured (citing cases). (Emphasis ours.) The fact that the insurer is possessed of information, whether obtained from its insured or from other sources, which may show the claim against the insured to fall outside the coverage of the policy is, in this regard, of no consequence. (Citing cases.)"

■ It is asserted both in the brief and on oral argument by counsel for defendant that prior to the

193

commencement of the suit by Ruark, that Ruark, Sims and the insurer all knew that Ruark was an employee in the course of his employment at the time of the occurrence and therefore excluded from coverage. From this statement counsel would infer that the three parties agreed that there was no coverage so that the insurer was thereby justified in refusing to defend Sims. The record before us does not support any such inference. It does reveal from interoffice communications of the insurance company, that on the day after the occurrence the insurance company made a preliminary determination of no coverage and 4 days later made a final determination to this effect, and the fact is that it did refuse to provide a defense for Sims pursuant to its previous determination. The most that can be said from the record before us is that Sims and Ruark knew that it was the *claim* of the insurance company that there was no coverage.

From the foregoing we reach the initial conclusion that it was the duty of the defendant to assume the defense of Ruark's suit for Sims and that in refusing to do so it breached its insurance contract.

The next question that presents itself is—what are the consequences of such a breach of contract? Here again the general rule is stated in 7 Am Jur2d Automobile Ins, Sec 167, as follows:

"By its unjustified refusal to defend an action against the insured, an automobile liability insurer becomes subject to the following new and positive obligations: (1) liability for the amount of the judgment rendered against the insured or of the settlement made by him; (2) liability for the expenses incurred by the insured in defending the suit; (3) liability for any additional damage traceable to its refusal to defend.

"The first and most obvious of these positive obligations created by an insurer's unjustified re-

194

fusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any settlement made by the insured of the action brought against him by the injured party."

This rule is the subject of an annotation in 49 ALR2d 717 and other cases are cited in the footnotes to the text above. It appears to be recognized as the rule in Illinois by Kinnan v. Charles B. Hurst Co., supra; Rom v. Gephart, supra; and Gould v. Country Mut. Cas. Co., supra. In the Rom v. Gephart case it is said:

"In this State it is the law that where the cause of action stated is within the coverage provided by the policy it is the insurer's duty to defend, and that where the complaint states different causes of action or theories of recovery, one of which is within the coverage and others which may not be, the insurer is bound to defend the ones which would be within the coverage of the policy. Canadian R. & U. Corp. v. Indemnity Ins. Co., 342 Ill App 456, 97 NE2d 132; Kinnan v. Charles B. Hurst Co., 317 Ill 251, 148 NE 12. In the case before us the first count of the complaint fell within the coverage of the policy. Had the plaintiff recovered a judgment or had the insured made a settlement with the plaintiff, *the insurance company, because of its failure to defend the suit, would have been estopped from asserting any defense as to payment based on non-coverage.* Canadian R. & U. Corp. v. Indemnity Ins. Co., supra; Kinnan v. Charles B. Hurst Co., supra; Brodek v. Indemnity Ins. Co., 292 Ill App 363, 11 NE2d 228; Bartkowski, for Use of Block v. Commercial Cas. Ins. Co., 275 Ill App 497." (Emphasis ours.)

The rule as announced in Rom and Gould cases is traceable to the earlier case of Kinnan v. Charles B.

Hurst Co., supra. This case provides an excellent analysis of a situation comparable to the one in the case at bar. In that case the insurance company issued a $5,000 policy of liability insurance to Charles B. Hurst Co. indemnifying it from liability to its employees. Kinnan brought a suit for damages for personal injuries claimed to have been sustained while an employee of Hurst Company. The insurance policy contained the usual provision obligating the insurer to investigate and defend. The insurer refused to provide a defense claiming that the accident was not covered by the policy of insurance. Kinnan recovered a judgment against Hurst Company which was insolvent. Kinnan then filed a creditors' bill against the insurer to which the insurer sought to assert a policy defense, namely that the policy being an indemnity liability policy it could not be liable to Kinnan, because Hurst Company being insolvent it had not paid the judgment of Kinnan, which, under the policy, was a condition precedent to the right of Hurst Company to recover against it. It therefore claimed it had no assets of Hurst Company in its hands. The Supreme Court held that Kinnan was entitled to recover from the insurance company up to the policy limits. A careful reading of the opinion will disclose the basic theory which is most important. It is, that when the insurer refused to defend the original Kinnan suit against Hurst Company, it breached its contract with Hurst Company. *At that time* a cause of action for breach of contract arose in favor of Hurst Company against the insurer. *At* that time the *liability* of the insurer, for the breach of contract, became fixed and certain although the amount of the liability may have been unliquidated. The *amount* of the liability becomes liquidated by the amount of the judgment obtained against the insured, because the amount of the judgment recovered can be said to be the natural

196

consequence of the breach of the insurance contract by the insurer. The final paragraph of the Supreme Court's opinion presents the solution of the problem. The court said:

"The Hurst Company had a cause of action against the defendant in error for its refusal to defend the suit brought against it by the complainant, the measure of damages in which was the amount recovered against the Hurst Company by the complainant to the extent of $5,000, together with interest on that amount from the date of the judgment, and costs. The complainant had a right to have the indebtedness which gave rise to this cause of action applied to the payment of his judgment, not because of any privity between the complainant and defendant in error, but because of the right of any judgment creditor, under such circumstances, to have the property of his judgment debtor applied to the payment of his debts."

While it is recognized that in the Kinnan case the property of the judgment debtor in the hands of the insurer was reached by creditors' bill the same rules would apply to a garnishment proceeding since it is designed to accomplish the same basic purpose.

Thus while the statement of the general rule in Am Jur2d Automobile Insurance Sec 167, supra, and the language of the court in the Rom case may at first blush appear to be confusing, what is really meant is that the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, i. e., the "Exclusions" provisions, when it has already breached the contract by violating the provisions inuring to the benefit of the insured, i. e., the defense provisions. In this sense it may properly be said to be estopped.

197

■ ■ Turning now to the garnishment suit it appears from the record before us that the defendant as garnishee answered interrogatories propounded to it and admitted the issuance of the policy but denied that it was indebted to Sims. By way of affirmative defense the answer alleged that at the time of the occurrence Ruark was an employee of Sims and engaged in his employment and that he was therefore excluded from coverage under paragraph (d) of Exclusions (hereinbefore set out). A replication and traverse was filed by plaintiff which among other things alleged that the matters of affirmative defense were improper, immaterial and did not constitute a defense. Defendant's theory is that (1) plaintiff in the garnishment action had the burden of proof to establish his right to recover and (2) that when it alleged in its answer the noncoverage under paragraph (d) of Exclusions it became incumbent upon plaintiff to prove that he was not excluded under paragraph (d) or, put another way, that he was not an employee of Sims engaged in his employment. There is no question as to the soundness of the first proposition. The plaintiff, however, complied with this rule when he proved the filing of a complaint by Ruark against Sims, the allegations of which disclosed a potential coverage under the policy (admittedly issued), a refusal by the insurance company to defend the suit, and the recovery by Ruark against Sims after full trial. As to the second proposition urged we find it to be without merit. Under our analysis of the questions presented by this appeal, the affirmative defense allegations of defendant's answer are immaterial, and therefore seek to create an immaterial issue in the garnishment suit. Again it is noted that plaintiff alleged in his replication and traverse that the same were immaterial and did not constitute a defense to the garnishment action. In addition counsel for plaintiff, in the trial of the

garnishment action, repeatedly asserted this position and objected to any attempt to require him to make such a showing or any attempt by defendant to make such a showing. Defendant cites cases which announce the rule that plaintiff can only recover against the garnishee insurer if the insured could recover. We have no quarrel with this general proposition of law. From our analysis it would have no application here, however.

There is an alternative theory of recovery advanced by counsel for plaintiff. In view of the foregoing we find it unnecessary to consider this theory.

■ In passing it might appear that the result reached announces a harsh rule so far as insurers are concerned. However, all authorities agree that quite often an insurer is faced with a dilemma as to whether to defend or to refuse to defend. In cases of doubt the answer is simple. It can (1) seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights.

■ For the foregoing reasons we conclude that the judgment of the trial court was erroneous and should be reversed. Since the only basis for a remandment would be the entry of a judgment we do not regard a remandment necessary. Accordingly the judgment of the trial court is reversed and judgment is here entered for the plaintiff and against defendant for the sum of $13,034.86 together with interest thereon at 5% from January 27, 1956.

Reversed with judgment here.

CARROLL, PJ and REYNOLDS, J, concur.