LAURA TORRISON AND PHIL TORRISON, NEXT FRIENDS AND PARENTS OF MATTHEW TORRISON, A MINOR, APPELLANTS, V. RONALD OVERMAN AND MYRTLE E. OVERMAN, APPELLEES. LAURA TORRISON AND PHIL TORRISON, NEXT FRIENDS AND PARENTS OF JACOB TORRISON, A MINOR, APPELLANTS, V. RONALD OVERMAN AND MYRTLE E. OVERMAN, APPELLEES.

549 N.W.2d 124

Filed June 7, 1996.   Nos. S-94-256, S-94-257.

James E. Harris and Timothy K. Kelso, of Harris, Feldman, Stumpf Law Offices, for appellants.

Joseph E. Jones and Michael J. Mooney, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

Laura and Phil Torrison, as parents and next friends, obtained two identical judgments against Ronald Overman for damages arising out of the sexual abuse of the Torrisons' two minor children. The Torrisons and Overman entered into a stipulation for consent to entry of a judgment against Overman, and the Douglas County District Court entered judgments against Overman. The Torrisons filed garnishment proceedings against State Farm Fire and Casualty Company (State Farm), Overman's homeowner's insurance carrier. State Farm and the Torrisons each moved for summary judgment. The district court granted summary judgment in favor of State Farm, and the Torrisons appeal.

## SCOPE OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Bogardi v. Bogardi*, 249 Neb. 154, 542 N.W.2d 417 (1996).

## FACTS

The Torrisons' two minor children were sexually abused by Overman, their maternal grandfather. The Torrisons filed identical lawsuits against Overman on behalf of each child (docket 911, No. 510, and docket 911, No. 511). The lawsuits set forth the same causes of action on behalf of each child and the parents. The petitions alleged that Overman engaged in sexual acts with the children against their will, which acts continued until approximately January 1992, and alleged that as a result of the repeated and prolonged physical and sexual abuse, severe and permanent psychological and emotional injuries were sustained by the children.

The Torrisons alleged that Overman was a mentally disordered sex offender and was predisposed to repeated commission of sexual offenses which were likely to cause substantial injury to the health of others. It was further alleged that because of Overman's mental disorder, he was unable to formulate the requisite intent to cause the foreseeable harm to the children and that his acts were and should be considered negligent acts. As another theory of recovery, the petition alleged that despite the knowledge of his pedophilic tendencies and despite recommendations to continue counseling, Overman negligently failed to seek treatment for his mental disorder and that as a direct and proximate result of his negligence, Overman continued to be alone with the young boys so that when his uncontrollable pedophilic urge came upon him, he would cause injury to them.

As a second cause of action, the Torrisons alleged that they had suffered severe emotional distress and psychological injuries as bystanders who had gained knowledge of the serious injuries of their children which were proximately caused by, and were a reasonably foreseeable consequence of, Overman's negligence.

On August 3, 1993, the Douglas County District Court entered two separate judgments against Overman based upon a "Stipulation and Agreement for Consent to Entry of Judgment." The court found that Overman engaged in sexual acts with the minor children against their will, which acts continued until approximately January 1992. The court found that

Overman knew he was a pedophile and had been so diagnosed by medical authorities, that he was a mentally disordered sex offender, and that due to the disorder, he was predisposed to repeated commission of sexual offenses which were likely to cause substantial injury to the health of others. Pursuant to the stipulation between the Torrisons and Overman, the court found that due to Overman's mental disorder, he was at all times relevant thereto unable to form the requisite intent to cause foreseeable harm to the children, that his acts were and should be considered negligent acts, and that despite knowledge of his pedophilic tendencies and despite recommendations to continue counseling, Overman negligently failed to seek treatment for his mental disorder and negligently allowed himself to be in unsupervised situations with minors.

Based upon the above stipulation, the district court found in each case that Overman was negligent in failing to seek professional help or failing to avoid situations where he would be left alone with children and would be able to act on his uncontrollable pedophilic desires. In each case, $100,000 was awarded to the child under the first cause of action and $100,000 was awarded to the parents under the second cause of action as a fair and reasonable amount in light of the nature and extent of their injury and damages. The total amount of the judgments was $400,000. The court found that State Farm had denied coverage under Overman's homeowner's policy for the claims alleged by the Torrisons in the lawsuits.

Having obtained judgments against Overman, the Torrisons proceeded to attempt collection of the judgments via a provisional remedy set forth in chapter 25, article 10, of the Nebraska Revised Statutes. In each case, the Torrisons filed an "Affidavit and Praecipe for Summons in Garnishment After Judgment." Garnishment interrogatories were then served upon State Farm. In summary, State Farm answered no to the interrogatories regarding wages, stating that it did not owe Overman any money for wages. State Farm also answered no to the question: "Do you have property belonging to the judgment debtor, or credits or monies owing the judgment debtor, whether due or not, other than earnings as defined above?" Although State Farm filed answers to the garnishment inter-

rogatories in docket 911, No. 511, only, it was stipulated by the parties that the answers should be considered to have been filed in both cases. The Torrisons then filed in each case an "Application to Determine Garnishee Liability Pursuant to Neb. Rev. Stat. §25-1030." The contents of this application are as follows:

COMES [sic] NOW the Plaintiffs, Laura Torrison and Phil Torrison, next friends and parents of : . . . a minor, hereinafter referred to collectively as ("Plaintiffs"), and respectfully make Application to the Court for determination of the liability of the Garnishee, State Farm Fire & Casualty Company, pursuant to Neb. Rev. Stat. §25-1030, and in support hereof state as follows:

1. On the 3rd day of August, 1993, judgment was entered against the Defendant Ronald Overman in the above-captioned matter in the total amount of $200,000.00 [to be allocated $100,000.00 to the child on the Plaintiff's First Cause of Action and $100,000.00 to the parents on the Plaintiff's Second Cause of Action] with taxable costs;

2. On the 8th day of September, 1993, Plaintiffs filed an Affidavit and Praecipe for Summons in Garnishment After Judgment, for service of garnishment interrogatories upon the Garnishee, State Farm Fire & Casualty Company, hereinafter referred to as ("Garnishee");

3. Summons in Garnishment was issued on September 8, 1993, sent by Certified Mail, to Garnishee on September 10, 1993, and actually received by and delivered to Garnishee on September 13, 1993, as evidenced by the return receipt filed herein. That pursuant to said Garnishee Summons, Garnishee was required to answer certain Interrogatories on or before the 18th day of September, 1993;

4. Garnishee filed its Answers to such Interrogatories herein on September 17, 1993, which Answers Plaintiffs hereby controvert and allege that Garnishee failed to make full, complete and satisfactory disclosure with regard to the properties and credits due Defendant in Garnishee's possession or under its control, and, in par-

ticular, as to insurance policies issued by Garnishee (State Farm) to Defendant.

WHEREFORE, Plaintiff moves the Court for an Order pursuant to Neb. Rev. Stat. §25-1030, determining the liability of Garnishee and entering judgment against the Garnishee in the full amount of Plaintiffs' claim, together with attorney's fees pursuant to Neb. Rev. Stat. §44-359, and setting the time for a hearing and directing the manner of notice upon the Garnishee herein.

In docket 911, No. 511, State Farm filed a "Reply to Plaintiffs' Application to Determine Garnishee Liability." The contents of the reply are set forth as follows:

1. [State Farm] [a]dmits that a judgment may have been entered against Defendant Ronald Overman in the above-captioned matter, but affirmatively asserts that said judgment was entered as the result of collusion and not entered in good faith, and the Consent Judgment entered herein is not binding upon State Farm or conclusive of the coverage issues under State Farm's insurance policy.

2. State Farm acknowledges that it has received Garnishment Interrogatories and filed Answers thereto; State Farm further alleges that Defendant Ronald Overman does possess a homeowner's insurance policy through State Farm, but that there is no coverage under said policy for the claims made against Mr. Overman.

3. State Farm denies any liability to the Plaintiffs in this garnishment proceeding.

The Torrisons then filed motions to strike State Farm's reply for the reason that Neb. Rev. Stat. § 25-1030 (Reissue 1995) permits only two pleadings: the answer of the garnishee, if one has been filed, and the application for determination of the garnishee's liability. The motions further alleged that if State Farm was permitted to file a reply, it should not be permitted to introduce new causes of action, and that said reply constituted an impermissible collateral attack on the judgments in favor of the Torrisons. The record does not reflect whether the reply was also filed in docket 911, No. 510. The district court directed that the parties file a stipulation stating that the

reply applied to that case, but no such stipulation appears in the record.

The Torrisons filed motions for summary judgment. State Farm moved to amend its answers to the garnishment interrogatories, alleging, inter alia, that it would be an abuse of discretion to deny such amendments and that State Farm should be allowed to amend its answer to include issues of fraud, collusion, and bad faith. State Farm also filed motions for summary judgment.

On February 17, 1994, the district court overruled the Torrisons' motions to strike and motions for summary judgment. The court sustained State Farm's motions to amend its garnishment answers and sustained its motions for summary judgment. The court found that State Farm was not bound to defend a suit based on a claim outside the coverage of the policy, that State Farm proffered there was no such cause of action as negligent assault and battery, and that Overman's sexually abusive acts were intentional as a matter of law, citing *State Farm Fire & Cas. Co. v. van Gorder*, 235 Neb. 355, 455 N.W.2d 543 (1990). The court found as a matter of law that Overman intended to inflict bodily injury on the minor children, that his acts and any damage caused thereby were excluded from coverage under his homeowner's policy, and that State Farm had no obligation to defend any civil suit or to pay damages caused by Overman's intentional acts. The Torrisons appeal.

## ASSIGNMENTS OF ERROR

The Torrisons assert that the district court erred (1) in sustaining State Farm's motions for summary judgment; (2) in allowing State Farm to collaterally attack the final judgments; (3) in failing to hold that State Farm was barred from assailing the underlying judgments via collateral estoppel; (4) in allowing State Farm to amend its answers to interrogatories; (5) in allowing State Farm to file a reply, contrary to the clear language of § 25-1030; and (6) in overruling the Torrisons' motions for summary judgment.

## ANALYSIS

We first consider what pleadings are permitted in a garnishment action. Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *ConAgra, Inc. v. Bartlett Partnership*, 248 Neb. 933, 540 N.W.2d 333 (1995). In construing a statute, a court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute. *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995).

Garnishment is a legal, not equitable, remedy unknown at common law and is a purely statutory remedy. Being in derogation of common law, garnishment statutes are strictly construed and demand compliance with all prerequisites before any remedy is available under such statutes. *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985).

The Torrisons claim that § 25-1030 limits the pleadings to the garnishee's answer to interrogatories and the garnishor's application for determination of liability and that a reply is not a proper pleading and, as a matter of law, may only be filed by a plaintiff in response to an answer. They argue that there is no authority for allowing the filing of a reply to supplement one's own answers; that it is not the province of a reply to introduce new causes of action, theories of recovery, or defenses; and that State Farm has improperly attempted to raise the issues of noncoverage, collusion, and fraud for the first time in its proffered reply.

State Farm asserts that its answers to garnishment interrogatories were sufficient to raise the issues that the Torrisons claim could not be raised by an amended answer to the interrogatories or by a reply. In the alternative, State Farm claims that it was properly allowed to amend its answers to garnishment interrogatories and to reply to the Torrisons' application to determine garnishee liability. State Farm points out that in actions not involving extraordinary remedies, general pleadings are to be liberally construed in favor of the pleader. See

*McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993).

State Farm also relies upon *Carlson v. Zellaha*, 240 Neb. 432, 482 N.W.2d 281 (1992), as authority that a reply may be filed in a garnishment proceeding. We note at this point that *Carlson* does not control our decision in this case because in *Carlson* the issue of whether the garnishor could file a reply was not considered. The reply filed by the garnishor had nothing to do with our decision in *Carlson*.

Neb. Rev. Stat. § 25-1010 (Reissue 1995) provides that upon the filing of an affidavit containing the necessary allegations, the court may direct the clerk of the court to issue a summons and order requiring the garnishee to answer written interrogatories. The garnishee is then required to answer under oath all the interrogatories put to the garnishee. Neb. Rev. Stat. § 25-1026 (Reissue 1995). If the garnishee's answers are not satisfactory to the plaintiff, the plaintiff may file an application for determination of the garnishee's liability. This application for determination of liability and the answers of the garnishee are the pleadings upon which trial of the issue of liability of the garnishee shall be had. § 25-1030.

As we review the garnishment statutes, we conclude that in a garnishment proceeding, the answers to interrogatories and the application to determine garnishee liability are the only pleadings for disposition of the liability issue. See, § 25-1030; *NC+ Hybrids v. Growers Seed Assn., supra.* "Because garnishment is a creature of statute, garnishment proceedings are necessarily governed by statutory provisions and specifications. Courts may not allow garnishment proceedings to follow any course other than that charted by the Legislature." *NC+ Hybrids*, 219 Neb. at 302, 363 N.W.2d at 366. An answer to interrogatories which states that the garnishee has no property, money, or credit due and owing to the judgment debtor acts as a denial of all issues presented by the application to determine garnishee liability filed by the garnishor. Thus, the court erred in allowing the reply. We do not reach the issue of whether the court should have permitted an amendment to the answers to interrogatories because the amendment to the answers is not necessary for our decision.

Under the facts of this case, we do not imply that State Farm was limited in formulating its answers to the garnishment interrogatories to merely checking a box marked yes or no. Upon receipt of the summons in garnishment, State Farm was advised that judgments totaling $400,000 had been entered against Overman. Having issued a policy of insurance to Overman, State Farm was placed on notice that the Torrisons were claiming State Farm owed a debt or had property, namely, a policy of insurance, belonging to Overman. As noted by the trial court, the preferred practice would be for State Farm to be more circumspect in regard to court filings. Nevertheless, we find under the facts of this case that the answer "no" by State Farm served as a denial to the issues which were subsequently raised by the Torrisons' application to determine garnishee liability.

State Farm's assertion that it did not have property belonging to Overman or credits or moneys owing to him required the Torrisons to set forth why State Farm was indebted to or held property, funds, or credits belonging to Overman. The Torrisons were required to frame the issues in the garnishment proceedings.

> In the application the garnisher may controvert or traverse the garnishee's response or may allege facts demonstrating that the garnishee owes a debt to the judgment debtor or that the garnishee holds property or a credit of the judgment debtor. By the application the garnisher frames the issue: Does the garnishee owe a debt to the judgment debtor or hold property, funds, or credits of a judgment debtor?

*NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 300, 363 N.W.2d 362, 366 (1985).

The Torrisons' application asserted that State Farm had a policy of insurance issued to Overman and that judgment had been entered against Overman in the amount of $400,000. Paragraph 4 of the application stated: "Garnishee failed to make full, complete and satisfactory disclosure with regard to the properties and credits due Defendant in Garnishee's possession or under its control, and, in particular, as to insurance policies issued by Garnishee (State Farm) to Defendant."

Therefore, the issue before the district court was whether State Farm held property of Overman's based on State Farm's policy of insurance issued to Overman.

We next consider whether the district court properly granted summary judgments in favor of State Farm. The district court stated:

> The Garnishee further proffers that there is "no such cause of action as negligent assault and battery . . . [and that Ronald Overman's] sexually abusive acts [to the Plaintiffs'] [sic] were intentional as a matter of law." *State Farm Fire and Cas. Co. v. Van Gorder, 235 Neb. 355, 358-360 (1990)*. The policy herein has the exact same language as the *Van Gorder* case i.e. an exclusion for "bodily injury or property damage which is expected or intended by the insured". *Van Gorder* supra p. 358. As was stated by a unanimous Nebraska Supreme Court: ". . . as a matter of law, [Ronald Overman] intended to inflict bodily injury on [these Plaintiffs], [his] acts and any damage caused thereby are excluded from coverage under his homeowner's policy. State Farm has no obligation to defend any civil suit or pay damages by reason of [Ronald Overman's] intentional acts." *Van Gorder, supra p. 360 and Exhibits 9, 10 and 11*.

In *State Farm Fire & Cas. Co. v. van Gorder*, 235 Neb. 355, 358, 455 N.W.2d 543, 545 (1990), we held:

> Regardless of the label John Doe affixes to the sexual abuse toward him, van Gorder's sexually abusive acts with John Doe were intentional as a matter of law. There is no such cause of action as negligent assault and battery. An assault and battery is an intentional act, whereas negligence is unintentional. . . . Likewise, sexually abusive acts are intentional. Consequently, as a matter of law, John Doe's petition succeeds in merely alleging damages resulting from van Gorder's intentional acts of sexual abuse upon John Doe.

If State Farm was bound by the underlying judgments because Overman's negligence proximately caused the damage to the Torrisons and their children, then the case at bar would be factually distinguishable from our decision in *van Gorder*

because Overman's acts would be viewed as not being intentional. The Torrisons argue that State Farm cannot collaterally attack the court's findings that Overman, being a mentally disordered sex offender, was unable to formulate the requisite intent to cause the foreseeable harm and that his acts were negligent. The Torrisons claim that the judgments against Overman are binding on State Farm because of the doctrine of collateral estoppel. In the alternative, the Torrisons assert that the "Consent to Entry of Judgment," the "Stipulation and Agreement for Consent to Entry of Judgment," and the "Order and Judgment" create a genuine issue of material fact which precludes summary judgment in favor of State Farm.

Instead of an action for declaratory judgment, the Torrisons brought a garnishment action as the remedy by which they would attempt to establish State Farm's liability. See *Herrera v. American Standard Ins. Co.*, 203 Neb. 477, 279 N.W.2d 140 (1979). Therefore, the Torrisons are limited to the issues that were framed by the application to determine garnishee liability and the answers to interrogatories. The Torrisons had the burden to establish why State Farm had property belonging to Overman. Unless the doctrine of collateral estoppel applied to State Farm, it was entitled to a judgment as a matter of law based upon our decision in *van Gorder*. After the moving party has shown facts entitling it to a judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *Bogardi v. Bogardi*, 249 Neb. 154, 542 N.W.2d 417 (1996).

There are four conditions that must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Farm Credit Bank v. Stute*, 248 Neb. 573, 537 N.W.2d 496 (1995).

We first consider whether State Farm was in privity with Overman. In noting that there is no definition of "privity" which can be applied to all cases involving collateral estoppel,

we stated in *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 505, 500 N.W.2d 566, 573 (1993), that " '[p]rivity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same.' "

State Farm asserts that it was not in privity with Overman because it had no duty to defend Overman. We agree. Since State Farm had no legal duty to defend because sexual assault is an intentional tort, there is no privity between State Farm and Overman. "[O]ne is not estopped or barred by a prior adjudication if he was not a party to such action and does not stand in the relation of privy to one who was a party." *Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 27, 230 N.W.2d 99, 106 (1975).

We point out that nothing in the Torrisons' application raised the issue of collateral estoppel, nor did the Torrisons establish that State Farm was in privity with Overman. In the judgments in the underlying actions against Overman, the court found that State Farm had denied coverage under Overman's homeowner's policy for the claims alleged by the Torrisons. It was therefore incumbent upon the Torrisons to raise the issue of collateral estoppel in the garnishment proceedings and establish the conditions necessary for collateral estoppel. Because the Torrisons failed to do so, we do not consider the issue on appeal. An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *Farm Credit Bank v. Stute, supra.*

## CONCLUSION

The parties to a garnishment proceeding are limited to the answers to interrogatories and the application to determine garnishee liability as the only pleadings for disposition of the liability issue. The Torrisons had the burden to establish why State Farm had property belonging to Overman, the judgment debtor. Because the Torrisons failed in their burden, State Farm is entitled to judgment as a matter of law. For the reasons set forth herein, the judgments of the district court granting summary judgment to State Farm are affirmed.

AFFIRMED.

CAPORALE, J., concurring.

I write separately because the appeal can be addressed in much simpler terms than those applied in the majority opinion. The sole issue framed by the pleadings was whether State Farm possessed any property belonging to Overman. Under our holding in *State Farm Fire & Cas. Co. v. van Gorder*, 235 Neb. 355, 455 N.W.2d 543 (1990), the Torrisons' petition did not make allegations which came within the coverages provided by State Farm. As a consequence, State Farm did not have a duty to defend the Torrisons' suit, see *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484 (1993), and *Millard Warehouse, Inc. v. Hartford Fire Ins. Co.*, 204 Neb. 518, 283 N.W.2d 56 (1979), and therefore had no property belonging to Overman. Accordingly, State Farm was entitled to judgment as a matter of law on the issue as framed by the garnishment pleadings, and the district court's entry of summary judgment on behalf of State Farm was correct.

LANPHIER, J., concurring.

Although I concur in the result, I believe that the majority incorrectly applies both insurance law and garnishment procedures.

As the majority states, the Torrisons sued Overman for negligent sexual assault of their two minor children. Overman's insurance company, State Farm, refused to defend Overman. Overman entered into a stipulation with the Torrisons and consented to the entry of judgments against him which were subsequently entered by the district court. The Torrisons filed garnishment proceedings against State Farm to collect the amount of the judgments. The majority holds that the Torrisons had the burden to establish in their garnishment action that State Farm had property belonging to Overman and that the Torrisons should prevail unless the doctrine of collateral estoppel prevents State Farm from attacking the consent judgment. The majority then holds that the Torrisons failed to meet their burden, since they failed to raise the issue of collateral estoppel and failed to establish that State Farm was in privity with Overman.

I would apply the legal analysis found in *Sims v. Illinois Nat. Cas. Co. of Springfield*, 43 Ill. App. 2d 184, 193 N.E.2d 123 (1963). The facts are strikingly similar. The injured party, Ruark, was hurt while riding in a truck owned by his employer, Sims. Ruark sued Sims. Sims' insurance company refused to defend because employees were excluded from coverage. A jury verdict was entered against Sims in favor of Ruark. Ruark then commenced a garnishment action against the insurance company to collect the amount of the judgment.

The *Sims* court stated that as a general rule, the duty of a liability insurer under a policy provision requiring it to defend an action brought against its insured by a third party is to be determined by the allegations of the complaint in such action. This is the rule in Nebraska. See, *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 243 Neb. 779, 502 N.W.2d 484 (1993); *Millard Warehouse, Inc. v. Hartford Fire Ins. Co.*, 204 Neb. 518, 283 N.W.2d 56 (1979).

Ruark's petition stated a cause of action. Nothing in the petition's allegations suggested an exclusion from the policy. "[I]n such a situation the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy." (Emphasis in original.) *Sims*, 43 Ill. App. 2d at 192-93, 193 N.E.2d at 127. The insurance company had a duty to defend Sims, and by refusing to do so, it breached its insurance contract.

We have previously held that there is no cause of action for negligent assault and battery and that an insurance company has no duty to defend an action where such a claim is made. *State Farm Fire and Cas. Co. v. van Gorder*, 235 Neb. 355, 455 N.W.2d 543 (1990). Here, the Torrisons' petition did not state a cause of action and was not within the policy's coverage. State Farm had no duty to defend. See, *Allied Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., supra*; *Millard Warehouse, Inc. v. Hartford Fire Ins. Co., supra*.

Assuming, arguendo, that the Torrisons' complaint had stated a case that was potentially within the policy's coverage, State Farm would have had a duty to defend. See *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981).

The *Sims* court examined the procedural aspects using a garnishment proceeding to recover a judgment from an insurer after a wrongful refusal to defend. The *Sims* court relied upon a previous case, *Kinnan v. Hurst Co.*, 317 Ill. 251, 148 N.E. 12 (1925), involving an action on a creditor's bill. The *Sims* court stated that the same rules applied to a garnishment proceeding, since it was designed to accomplish the same basic purpose.

In *Kinnan*, the insurer had wrongfully refused to defend its insured. Upon wrongful refusal to defend, a cause of action arose in favor of the insured against its insurer. At that point, the liability of the insurer became fixed and was liquidated when the injured party obtained a judgment against the insured. The injured party

> had a right to have the indebtedness which gave rise to this cause of action applied to the payment of his judgment, not because of any privity between [the injured party and the insurer], but because of the right of any judgment creditor, under such circumstances, to have the property of his judgment debtor applied to the payment of his debts.

*Kinnan*, 317 Ill. at 261, 148 N.E. at 16. This concept clarifies the majority's reference in this case to the lack of privity between Overman and State Farm. State Farm had no property belonging to Overman because its refusal to defend was not wrongful. Privity therefore is not an issue.

The *Sims* court addressed the garnishment pleadings to determine if the issues were properly raised. In its answers to the interrogatories, the insurer denied that it had property of the insured and raised an affirmative defense that its policy excluded coverage for employees. The court held such allegations to be immaterial. Pursuant to the Illinois rule, wrongful refusal to defend estops the insurer from later attacking the judgment.

Apparently, there is a split among jurisdictions as to whether an insurer in breach of its duty to defend is precluded from taking the position that the judgment or settlement did not involve a covered risk. 7C John A. Appleman, Insurance Law and Practice § 4689 (1979 & Supp. 1995); *Sentinel Ins.*

*v. First Ins. of Hawai'i*, 76 Haw. 277, 875 P.2d 894 (1994). The Hawaii Supreme Court characterized the *Sims* approach as utilizing a form of estoppel as a punitive measure against insurers for wrongful breach of a contractual duty to defend and rejected its blanket application to all cases.

Implicitly, the majority follows the Illinois rule, but does so using a collateral estoppel analysis. Although the underlying principles are related, collateral estoppel is improperly applied by the majority.

WHITE, C.J., joins in this concurrence.