771 N.W.2d 156 (2009)
17 Neb. App. 669
Mary Lynn HASKELL and Elizabeth Mendoza, appellants,
v.
MADISON COUNTY SCHOOL DISTRICT NO. 0001, also known as Madison Public Schools, et al., appellees.
No. A-08-1047.
Court of Appeals of Nebraska.
June 9, 2009.
*160 John F. Recknor, of Recknor, Williams & Wertz, Lincoln, for appellants.
Joshua J. Schauer, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., and, on brief, Karen A. Haase and Adam J. Prochaska, of Harding & Schultz, P.C., L.L.O., Lincoln, for appellees.
INBODY, Chief Judge, and SIEVERS and CASSEL, Judges.
CASSEL, Judge.

INTRODUCTION
Good Cheer Public Schools (Good Cheer) formerly existed as an elementary-only school district, but was merged into a "K-12" district under the mandate of 2005 Neb. Laws, L.B. 126. After the merger, voters repealed L.B. 126 by referendum. Mary Lynn Haskell and Elizabeth Mendoza now appeal from the district court's orders (1) dismissing their suit for an injunction to stop the surviving district from closing Good Cheer and (2) taxing attorney fees to the appellants and their attorneys. Because the repeal had no retroactive effect, the passage of the referendum did not revive Good Cheer as a separate legal entity. But because the issues presented in this case were not identical to those determined in prior case law and were not entirely without an arguable basis, the district court abused its discretion in awarding attorney fees.

BACKGROUND
Before we turn to the background of the instant case, we summarize the historical events concerning L.B. 126 and its subsequent repeal by referendum, as the issues in the instant appeal revolve around the effect of the repeal. To provide the historical background, we paraphrase from the decision in Pony Lake Sch. Dist. v. State Committee for Reorg., 271 Neb. 173, 710 N.W.2d 609 (2006).

L.B. 126 and Its Repeal.
On June 3, 2005, the Legislature passed L.B. 126 over the Governor's veto. L.B. 126 required that all Class I school districts disband and attach to other school districts by June 15, 2006.
On September 1, 2005, a group called Nebraskans for Local Schools Committee filed a referendum petition to repeal L.B. 126. The petition contained the signatures of approximately 7.7 percent of Nebraska's registered voters. The Secretary of State determined that the petition did not contain sufficient signatures to suspend the operation of L.B. 126 pursuant to Neb. Const. art. III, § 3. This would have required the signatures of 10 percent of registered voters. Therefore, L.B. 126 went into effect.
The appellants have alleged that on November 7, 2006, Nebraska voters repealed L.B. 126 in a referendum vote.

Instant Case.
The appellants filed a "Complaint for Injunctive Relief, Declaratory Judgment, *161 and Monetary Damages" with the district court against Madison County School District No. 0001, also known as Madison Public Schools, and its board members, Paul Randles, George Moyer, Douglas Wagner, Harlow Hansen, Mark Higby, and Steve Ruh (collectively Madison). The complaint alleged that the appellants were injured by Madison's decision to close Good Cheer, because their children would be prevented from attending Good Cheer. The complaint also alleged that Good Cheer was a Class I school district and that "[a]s a result of the enactment of [L.B.] 126, the State Reorganization Committee purported to dissolve Good Cheer... and attach its geographic territory and assign its property both real and personal to ... Madison ...." The appellants further alleged that the Madison school board decided to close Good Cheer effective at the end of the 2007-08 school year but lacked the power to do so because the repeal of L.B. 126 restored Good Cheer to its former status as an independent Class I school district.
The district court granted Madison's motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6). In doing so, the district court applied the doctrine of res judicata. Neither of the appellants has previously been a party to litigation involving L.B. 126.
Madison also moved for sanctions pursuant to Neb.Rev.Stat. § 25-824 (Reissue 2008). The district court granted sanctions in the amount of $6,700 in attorney fees, one-third of which was taxed to the appellants and two-thirds of which was taxed to the appellants' attorneys.
This timely appeal followed.

ASSIGNMENTS OF ERROR
The appellants assign that the trial court erred (1) in granting Madison's motion to dismiss, (2) in finding the doctrine of res judicata applicable to this case, and (3) in finding the litigation frivolous and granting sanctions against the appellants.

STANDARD OF REVIEW
An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim. Ichtertz v. Orthopaedic Specialists of Neb., 273 Neb. 466, 730 N.W.2d 798 (2007). Dismissal under § 6-1112(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. Crane Sales & Serv. Co. v. Seneca Ins. Co., 276 Neb. 372, 754 N.W.2d 607 (2008).
On appeal, a trial court's decision allowing or disallowing attorney fees under § 25-824 for frivolous or bad faith litigation will be upheld in the absence of an abuse of discretion by the trial court. Brummels v. Tomasek, 273 Neb. 573, 731 N.W.2d 585 (2007).

ANALYSIS

Res Judicata.
The appellants request that we consider whether the district court erred in finding that res judicata precluded their cause of action. We decline to do so, because (1) the answer depends upon a theory of "virtual representation" not yet considered by the Nebraska Supreme Court and (2) there are alternate grounds which are sufficient to uphold the district court's dismissal of the appellants' complaint under § 6-1112(b)(6).
The district court dismissed the appellants' complaint pursuant to § 6-1112(b)(1) and (6) on the basis of res judicata. The court adopted the reasoning of Nolles v. State Com. Reorganization School Dist., 524 F.3d 892 (8th Cir.2008). In Nolles, the *162 Eighth Circuit Court of Appeals applied the doctrine of "virtual representation" to preclude the plaintiffs' claim that L.B. 126 constituted a violation of their fundamental right to vote. The Eighth Circuit determined that the exact same issue was validly decided on the merits in Pony Lake Sch. Dist. v. State Committee for Reorg., 271 Neb. 173, 710 N.W.2d 609 (2006), which case precluded the claim even though the plaintiffs in Pony Lake Sch. Dist. were completely different from the plaintiffs in Nolles.
Although the Eighth Circuit purported to apply Nebraska law, the Eighth Circuit utilized a theory of res judicata not yet recognized in Nebraska. The Nebraska Supreme Court has held that the doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. Jensen v. Jensen, 275 Neb. 921, 750 N.W.2d 335 (2008). The difference between Nebraska law and the Eighth Circuit decision lies in the definition of "privity." The Nebraska Supreme Court has held that privity requires, at a minimum, a substantial identity between the issues in controversy and a showing that the parties in the two actions are really and substantially in interest the same. See Torrison v. Overman, 250 Neb. 164, 549 N.W.2d 124 (1996). In Nolles, the Eighth Circuit adopted an expansive definition of privity termed "virtual representation," which the Nebraska Supreme Court has not yet adopted. Virtual representation is "`an equitable theory rather than ... a crisp rule with sharp corners and clear factual predicates, such that a party's status as a virtual representative of a nonparty must be determined on a case-by-case basis.'" Nolles v. State Com. Reorganization School Dist., 524 F.3d at 902, quoting Gonzalez v. Banco Cent. Corp., 27 F.3d 751 (1st Cir.1994).
Because we find no Nebraska precedent either adopting or rejecting the virtual representation theory of privity, we decline to resolve the case before us on the ground of res judicata but nevertheless find that the district court correctly sustained the motion to dismiss. Where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm. In re Estate of Lamplaugh, 270 Neb. 941, 708 N.W.2d 645 (2006). As we explain more fully below, we conclude that the appellants' complaint does not set forth a cause of action recognized under Nebraska law and that the complaint was properly dismissed pursuant to § 6-1112(b)(6).

Failure to State Cause of Action.
The premise underlying the appellants' cause of action is that the repeal of L.B. 126 reestablished Good Cheer even though, as the appellants alleged, "the State Reorganization Committee purported to dissolve Good Cheer" pursuant to L.B. 126. The appellants argue that the repeal of L.B. 126 rendered L.B. 126 a nullity, nullified all actions taken pursuant to L.B. 126, and thus restored all Class I schools to their status prior to the enactment of L.B. 126. The appellants support their argument by citing to Pony Lake Sch. Dist. v. State Committee for Reorg., 271 Neb. 173, 192, 710 N.W.2d 609, 625 (2006), wherein the Supreme Court stated as follows in concluding that the referendum *163 vote to repeal L.B. 126 would not merely be advisory: "If the voters reject L.B. 126 at the referendum election, the act will stand repealed.... To repeal is to rescind or abrogate an existing law." The appellants argue that this languagespecifically the word "rescind"requires us to analogize the repeal of a law pursuant to a referendum to the rescission of a contract. The appellants insist that because rescission restores the parties to the status quo as if the contract had never existed, a referendum which "rescind[s] ... an existing law" must similarly restore everyone to status quo as if the law had never existed. See brief for appellants at 22 (emphasis omitted).
However, the rules of contract law are not applicable to measures passed via initiative or referendum. The Nebraska Supreme Court has recognized that measures passed via initiative or referendum are to be treated the same as bills passed by the Legislature. See Klosterman v. Marsh, 180 Neb. 506, 143 N.W.2d 744 (1966). Under Nebraska constitutional provisions vesting the legislative power of the state in the Legislature, but reserving to the people the right of initiative and referendum, the Legislature on the one hand and the electorate on the other are coordinate legislative bodies, and there is no superiority of power between the two. See id. In the absence of specific constitutional restraint, either may amend or repeal the enactments of the other. Id. Thus, the rules of contract law do not apply in the instant case.
Further, in the instant case, Neb. Const. art. III, § 3, prevents the referendum vote from repealing L.B. 126 retroactively. Although this section does not explicitly prohibit retroactive repeal, the operation of the section would be substantially impeded if we treated the repeal of L.B. 126 as retroactive. Neb. Const. art. III, § 3, suspends the operation of legislation pending the outcome of a referendum vote only where, among other requirements, the "petition [was] signed by not less than ten percent of the registered voters of the state." A petition containing the signatures of 5 percent of registered voters triggers a referendum vote but does not suspend the operation of legislation. Id. In Pony Lake Sch. Dist. v. State Committee for Reorg., supra, the Nebraska Supreme Court decided that the petition to repeal L.B. 126 did not contain sufficient signatures to suspend the operation of L.B. 126 pending the referendum vote. In effect, the appellants request that we declare that the referendum accomplished retrospectively what Neb. Const. art. III, § 3, prevented prospectivelythe suspension of the operation of L.B. 126 from its effective date until the date of its repeal. We decline to do so, because it would render meaningless the 10-percent requirement contained in Neb. Const. art. III, § 3.
The appellants also urge that because the referendum was not an advisory vote and successfully repealed L.B. 126which had eliminated Class I school districts the referendum must have had some effect on the reestablishment of Class I school districts. There indeed was such an effect: Nebraskans may now organize new Class I school districts pursuant to Neb.Rev.Stat. § 79-403 (Reissue 2008). At oral argument, the appellants claimed and Madison conceded that a practical difficultythe requirement of consent of the K-12 district now encompassing the area of the former Class I districtmakes the creation of a new Class I district unlikely. But we reject the appellants' argument that creation of a new Class I district is impossible in the legal sense. There has indeed been an important change in the law accomplished by the referendum vote. However, the *164 vote did not have the effect which the appellants desiredthe repeal did not operate to reestablish the former Class I school districts.
Because the repeal of L.B. 126 did not affect the already completed dissolutions of Class I school districts and their attachments to other school districts, Madison's school board had the unrestricted ability to close Good Cheer as of April 14, 2008, when the board adopted a motion declaring such action. Neb.Rev.Stat. § 79-1094 (Reissue 2008) expressly authorizes the school board of any district maintaining more than one school to "close any school or schools within such district." Moreover, Neb.Rev.Stat. §§ 79-525 and 79-526 (Reissue 2008) vest school boards with the power to make decisions regarding school premises. Madison's school board was fully empowered to close Good Cheer. The district court did not err in dismissing the appellants' complaint.

Sanctions.
The appellants argue that the district court abused its discretion in imposing sanctions pursuant to § 25-824. The district court imposed sanctions based on its determination that this case was frivolous because it was precluded by res judicata. Because we deem it inappropriate to decide the primary issue in this case on the basis of res judicata and because the instant case was the first case addressing the claim of retroactivity after the referendum vote, we conclude that sanctions were not appropriate.
A court shall award as part of its judgment and in addition to any other costs otherwise assessed reasonable attorney fees and court costs against any attorney or party who has brought or defended a civil action that alleges a claim or defense which a court determines is frivolous or made in bad faith. Baltensperger v. United States Dept. of Ag., 250 Neb. 216, 548 N.W.2d 733 (1996). In the context of § 25-824, a frivolous action is one in which a litigant asserts a legal position wholly without merit, that is, without rational argument based on law and evidence to support the litigant's position. Cornett v. City of Omaha Police & Fire Ret. Sys., 266 Neb. 216, 664 N.W.2d 23 (2003).
In the instant case, the appellants presented an issue similar to but distinct from the issue decided in Pony Lake Sch. Dist. v. State Committee for Reorg., 271 Neb. 173, 710 N.W.2d 609 (2006). In Pony Lake Sch. Dist., the Nebraska Supreme Court determined that the referendum petition for L.B. 126 would not suspend the operation of L.B. 126, pursuant to Neb. Const. art. III, § 3, pending the referendum election, because there were not sufficient signatures. In the case before us, the appellants posed the question of whether a successful referendum operated retroactively to the statute's original effective date. Although we have determined that in substance, the appellants have requested the same thing prohibited by Pony Lake Sch. Dist., they have asserted a rational argument derived from the language of that decision. Attorneys and litigants should not be inhibited in pressing novel issues or in urging a position which can be supported by a good faith argument for an extension, modification, or reversal of existing law. Shanks v. Johnson Abstract & Title, 225 Neb. 649, 407 N.W.2d 743 (1987).
Because in considering sanctions, we must resolve any doubt about the appellants' legal position in their favor, we conclude that the district court abused its discretion in awarding attorney fees. Any doubt about whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question. Cornett v. City of *165 Omaha Police & Fire Ret. Sys., supra. Although in the case before us, the appellants' argument is somewhat farfetched, we cannot say that it was wholly without merit.

CONCLUSION
Because the appellants are not entitled to relief from the operation of L.B. 126 prior to its repeal and the repeal was not retroactive, we conclude that Good Cheer, a former Class I school district disbanded pursuant to L.B. 126, no longer exists. Therefore, the appellants' complaint premised on the existence of Good Cheer fails to state a cause of action. The district court did not err in dismissing the appellants' complaint. However, because the appellants' allegation that the repeal of L.B. 126 applied retroactively was not frivolous, we conclude that the district court's award of attorney fees constituted an abuse of discretion, and we reverse the award.
AFFIRMED IN PART, AND IN PART REVERSED.